Filed 2/6/18; pub. order 3/2/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

W.P.,

    Petitioner,

v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

    Respondent;

SAN BERNARDINO COUNTY
CHILDREN AND FAMILY SERVICES,

    Real Party in Interest.

E069569

(Super.Ct.No. J269683)

O P I N I O N

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Erin K. Alexander, Judge. Petition granted.

Law Office of Dennis Moore and Dennis Moore for Petitioner.

No appearance for Respondent.

Michelle D. Blakemore, County Counsel, and Michael A. Markel, Deputy County Counsel, for Real Party in Interest.

The juvenile court terminated petitioner, W.P.'s (Mother), reunification services as to G.N. (born in September 2016), R.Y. (born in January 2009), M.M.M.1 (born in March 2005), and M.M.M.2 (born in May 2003) (collectively Minors) and set the Welfare and Institutions Code section 366.26 hearing.[1]  In her petition, Mother contends the juvenile court erred as a matter of law in declining to grant her another six months of reunification services as to the elder three Minors.  The petition is granted.

## I.  FACTUAL AND PROCEDURAL HISTORY

On December 27, 2016, personnel from real party in interest, San Bernardino County Children and Family Services (CFS), received a referral alleging emotional abuse and general neglect of Minors by Mother and physical abuse by R.N. (Father 1).  The allegations alleged substance abuse by Mother and domestic violence in the presence of Minors; Father 1[2] reportedly threw a beer can at Mother and hit G.N.

On January 3, 2017, CFS personnel received a second referral alleging Mother was transient, on drugs, and had left Minors with a friend, J.C.  Minors disclosed witnessing the parents engage in domestic violence while in their care.  They also described substance use by both the parents and drug paraphernalia in the home.  They

---

[1]  All further statutory references are to the Welfare and Institutions Code.

[2]  Father 1 was the presumed father of G.N.  F.M. (Father 2) was the presumed father of R.Y., M.M.M.1, and M.M.M.2.  Father 2 was incarcerated at the time of the investigation.

2

described being hit by both the parents. They disclosed that Father 1 hit Mother's head causing her to have a bloody ear and, on one occasion, threw a cup at Mother's head. Father 1 would pull Mother's hair and hit her with his hands. Minors said they did not feel safe with the parents. On January 25, 2017, M.M.M.2 reported she had not seen Mother in four months; she said Mother left Minors because Mother wanted to be with her boyfriend.

Mother had a previous history with CFS, including three previous neglect investigations, three prior abuse investigations, and a separate general neglect investigation with respect to M.M.M.1, which prompted voluntary family maintenance services. When the social worker met with Mother, Mother refused to provide an address for the social worker to assess provisions for G.N. Mother admitted mutual domestic violence with Father 1: "I would get the best hits." However, she denied Minors were present during these incidents; she said the children were lying when they said otherwise; Mother reported that the parents would tell Minors to go to their room when the parents fought. The social worker told Mother to drug test the day after their initial interview; Mother failed to show for the test.

Father 1 had an extensive history with CFS; reunification services as to six of Father 1's other children had previously been terminated; Father 1's parental rights had been terminated as to one of his other children. Father 1 also had an extensive criminal history. At the time of the initial investigation, the social worker could not locate Father 1.

The social worker filed separate juvenile dependency petitions as to each Minor. With respect to G.N., the petition alleged Mother had a substance abuse problem (b.1); Father 1 had a violent criminal history (b.2); Father 1 had a history of domestic violence (b.3); Mother exposed Minors to domestic violence (b.4); and six of Father 1's previous children had been removed from his custody, with all of whom he had failed to reunify and as to one of whom he had had his parental rights terminated (j.5-j.8). The petitions with respect to the other Minors alleged Mother had a substance abuse problem (b.1); Mother failed to protect Minors from exposure to domestic violence (b.2); Father 2 was incarcerated (g.3); and Mother had left Minors with J.C. with no provision for support (g.4). On February 23, 2017, the juvenile court detained Minors.

In the jurisdictional and dispositional report filed on March 13, 2017, the social worker noted G.N. had been placed in foster care; the other Minors were left in the care of J.C. The older Minors reported feeling safe with J.C.; M.M.M.1 reported having lived with J.C. for seven months; J.C. reported she had Minors since September 2016. Father 1, who had apparently been located, denied any instances of domestic violence. Mother visited with Minors separately. Mother provided a negative drug test on February 27, 2017.

The social worker recommended that the juvenile court find the allegations in the petitions true, remove Minors from the parents' custody, deny reunification services to both Father 1 and Father 2, and order reunification services for Mother. The

4

recommended case plan for Mother included parenting classes, domestic violence classes, counseling, and drug treatment.

In an additional information for the court filed on April 18, 2017, the social worker reported Mother had informed her that Father 1 had been arrested for domestic violence against Mother on April 5, 2017. The social worker confirmed the arrest. Mother continued to have supervised visits with Minors at CFS offices.

At the jurisdictional and dispositional hearing on April 18, 2017, the juvenile court found all the allegations in the petitions true, sustained the petitions, and declared Minors dependents. The court removed Minors from the parents' custody. The court denied reunification services to Father 1 under section 361.5, subdivision (b)(10) (reunification services terminated as to previous children) and (b)(11) (parental rights terminated as to a previous child). The court denied Father 2 reunification services pursuant to section 361.5, subdivision (e)(1) (parent incarcerated). The court ordered reunification services for Mother.

In the status review report filed on October 17, 2017, the social worker recommended that the court terminate Mother's reunification services and set the section 366.26 hearing. The social worker referred Mother to individual counseling, parenting education, domestic violence, substance abuse services, and random drug testing on March 27, 2017. Mother enrolled in parenting classes on March 30, 2017; domestic violence classes on April 3, 2017; and individual counseling on April 4, 2017. Mother attended five parenting classes, six domestic violence classes, and individual counseling.

Her last attendance in services occurred on June 22, 2017. Her service provider attempted to re-engage Mother on July 24, 2017; however, Mother indicated she would no longer be attending services at their agency; she said she would be taking classes at another agency.

Mother enrolled in substance abuse services on June 20, 2017, but appeared to be struggling to stay clean; she was referred to an intense outpatient program on July 5, 2017, in which she enrolled on July 20, 2017. She attended those services between July and September, and then stopped attending. During her attendance, she tested positive for methamphetamine four times, failed to show for two tests, and tested negative once. Mother failed to show for 12 random drugs tests requested by the social worker and tested negative once.

On August 17, 2017, Mother's counselor brought her to the CFS offices where the counselor reported that Mother had expressed that Father 1 had battered her. The social worker observed Mother's left eye was swollen and black and purple. On August 20, 2017, Mother reported the incident to police, who arrested Father 1. Father 1's family subsequently threw Mother out of their home; she was now homeless.

On May 26, 2017, M.M.M.1 and M.M.M.2 had an argument with Mother because she was blaming them for the dependency proceedings.[3] During subsequent visits, Mother was observed to act appropriately; Minors appeared to enjoy the visits. Mother

---

[3] M.M.M.2 had previously reported that Mother had asked her to lie to the social worker.

6

attended all visits as scheduled between April and June 2017; however, Mother left early during visits in August and September 2017.

On October 18, 2017, the court ordered Mother to drug test that day; failure to test would be considered a positive result. In an additional information for the court filed on December 1, 2017, the social worker reported that Mother had approached her after the hearing on October 18, 2017, to ask if she had to test that day; Mother said that if she did, it would reflect positive for methamphetamine because Mother had used methamphetamine the previous night. Mother tested nonetheless; the result was positive for amphetamines. Mother failed to show for another drug test scheduled for November 2, 2017. Mother began attending individual counseling again through another agency on November 13, 2017, and had been showing improvement.

At the hearing on December 1, 2017, Mother's counsel argued: "Your Honor, one thing I would like to point out, in the [section] [361].21[, subdivision] (e) report it states that the older three minors are in one placement and the youngest minor G[.N.], he is in a separate placement. He's one year old. So for the kids that are—for the three kids in one placement, the youngest of that group is eight. And children ages three and older get twelve months—you get twelve months of services unless there is a sibling group. I don't think this is a proper sibling group because the one kid who would make this a sibling group for only six months of services is in a separate placement." The court responded: "I have reviewed the statute as cited by counsel. I don't have the same reading. It looks to me when defining what a sibling group is, the requirements are a

sibling group who were removed from parental custody at the same time, which did occur in this case."

The court found Mother had made no progress. Thus, the court terminated reunification services for Mother and set the section 366.26 hearing.

## II. DISCUSSION

Mother contends the court erred as a matter of law in declining to provide her a minimum of 12 months of reunification services because the court improperly interpreted section 361.5, subdivision (a)(1)(c), to apply to any sibling group removed from parents, regardless of whether those siblings were placed together. CFS concedes the juvenile court erred in its interpretation of the statute and in terminating Mother's reunification services after only six months based upon that erroneous interpretation. We agree.

"Except as otherwise provided in [section 361.5, subdivision (a)(1),] subparagraph (C), for a child who, on the date of initial removal from the physical custody of his or her parent or guardian, was three years of age or older, court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as provided in Section 361.49, unless the child is returned to the home of the parent or guardian." (§ 361.5, subd. (a)(1)(A).)

"For the purpose of placing and maintaining a sibling group together in a permanent home should reunification efforts fail, for a child in a sibling group whose members were removed from parental custody at the same time, and in which one member of the sibling group was under three years of age on the date of initial removal

8

from the physical custody of his or her parent or guardian, court-ordered services for some or all of the sibling group may be limited as set forth in subparagraph (B). For the purposes of this paragraph, 'a sibling group' shall mean two or more children who are related to each other as full or half siblings." (§ 361.5, subd. (a)(1)(C).)

"We review de novo the . . . purely legal question before us. [Citation.]" (*People v. Arroyo* (2016) 62 Cal.4th 589, 593.) """Thus, 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme . . . .'" [Citation.]" (*Ibid.*)

The clear language of section 361.5, subdivision (a)(1)(C), reflects that the juvenile court's statutory power to limit a parent's services to six months for all minors removed from that parent's custody, even when they were older than three years of age when removed, when one member of the sibling group was three years of age or under at the time of removal applies only when that sibling is *placed with the older siblings*. The statute reflects that: "For the purpose of *placing and maintaining a sibling group together in a permanent home* should reunification efforts fail . . . court-ordered services for some or all of the sibling group may be limited . . . ." (§ 361.5, subd. (a)(1)(C), italics added.)

Here, however, Minors were not all placed together as a sibling group for the purpose of maintaining a permanent home. Rather, G.N., the only minor who was under the age of three at the time of removal and the only minor whom the court would have

9

power alone to limit reunification services to Mother to six months, was placed in a foster home separate from his older siblings.  All three of the older siblings were placed with J.C.  Thus, the court erred in relying on the statute to terminate Mother's reunification services as to the elder three siblings after only six months.  Thus, the petition must be granted and the court must offer Mother six additional months of services as to the elder three Minors.

### III.  DISPOSITION

The petition is granted.

McKINSTER<br>
Acting P. J.

We concur:

MILLER
     J.

SLOUGH
     J.

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

## **ORDER**

| | |
|---|---|
| W.P., | |
|     Petitioner, | E069569 |
| v. | (Super.Ct.No. J269683) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | The County of San Bernardino |
|     Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
|     Real Party in Interest. | |

THE COURT

A request having been made to this Court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above entitled matter on February 6, 2018, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

McKINSTER
Acting P. J.

We concur:

MILLER
                    J.

SLOUGH

11

J.